### NORTHERN PAC. RY. CO. v. SPIKE.

(Circuit Court of Appeals, Eighth Circuit. February 19, 1903.)

No. 1,797.

1. RAILROADS—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE.

Plaintiff's intestate was riding home alone after dark, in a lumber wagon, when he was killed by a collision at a crossing. The highway and railroad ran parallel for some distance, till within 75 feet of the crossing the highway turned down a declivity to the crossing. At the time of the accident the train was 12 hours late, and running at a speed of 30 miles an hour, in the same direction deceased was driving. It gave no signals upon approaching the crossing, and the wind was in the opposite direction. The view of the track was more or less obstructed from the highway, and from the turn to the crossing neither the train nor its headlight could be seen until one was on or near the track. Defendant attempted to show by photographs taken some time after the accident, and in the daytime, that at various points before reaching the crossing decedent could have seen the headlight on the locomotive, had he looked, but no photograph was shown of any point between the turn and the crossing. *Held*, that decedent was not shown to have been guilty of contributory negligence, as a matter of law.

2. SAME—CROSSING—STATUTORY SIGNALS.

Where the view of a railroad track, running almost parallel with a highway, is obstructed by trees, fences, etc., so that a train can be seen

only at intervals, and at a distance of 75 feet from a crossing such view is entirely cut off by an embankment till the traveler is on or near the track, it is imperatively necessary for the safety of travelers that trains give the statutory signals on approaching the crossing.

**2. SAME—CONTRIBUTORY NEGLIGENCE—PRESUMPTION.**

The presumption that a traveler killed at a railroad crossing was at the time in the exercise of due care is' sufficient to warrant a recovery in the absence of countervailing testimony.

In Error to the Circuit Court of the United States for the District of Minnesota.

L. T. Chamberlain (C. W. Bunn, on the brief), for plaintiff in error.

Halvor Steenerson (Charles Loring, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. On the 31st day of December, 1900, about 8:25 p. m., William I. Spike, a man of intelligence, 31 years old, in the full possession of all his senses, was traveling along the public highway, with which he was · familiar, leading from Detroit, Minn., to his home; driving a span of mules, hitched to an ordinary lumber wagon. For some distance the highway runs east and west, and nearly parallel to the railroad, but at varying distances from it, until the highway approaches within about 75 feet of the point at which it crosses the railroad track, when it turns south, and, going down a declivity, crosses the railroad at grade. At this crossing a locomotive pulling one of defendant's passenger trains came in collision with the team driven by Mr. Spike, killing him instantly, and this action is brought by his administratrix, under the Minnesota statute, to recover damages for his death, upon the ground that the accident resulted solely from the culpable negligence of the defendant railway company. In this court it is not contended that the evidence did not warrant the jury's finding that the railway company was guilty of negligence. The contention is that the deceased was guilty of contributory negligence, and that this court should so declare, as matter of law. The burden is on the defendant to establish this defense of contributory negligence by clear and satisfactory testimony. A brief summary of some of the leading facts will show very clearly that it has not discharged this burden.

The accident occurred after night. The deceased and the train were going in the same general direction until the highway turned sharp to the south to cross the railroad track. The train was running at the speed of 30 miles an hour. As it approached the high-·way it gave no signal by whistle or bell, as required by the law of the state. The wind was blowing in the opposite direction to that which the deceased and the train were moving. The train was 12 hours behind its schedule time. The country along and over which the highway ran was somewhat broken, and owing to this fact, and the presence of brush, trees, telegraph poles, fences, and the like, the train or its headlight could only have been seen at intervals by one

looking back for that purpose; and, owing to a railroad cut and the topography of the country, neither the train nor its headlight could be seen from the point where the highway turned to the south to cross the railroad track until one was on or near the track.

The defendant's evidence consists chiefly of photographs taken under the supervision of its claim agent, which, it is claimed, show that at various points before the deceased reached the crossing he might have seen the headlight of the approaching train if he had turned and looked. But it is obvious enough that these photographs were taken only at the points from which the train could be seen, and not at any of the points along the road from which the train could not be seen, and particularly was no photograph taken from the point in the highway where it descends to and crosses the railroad track. The photographs were taken some time after the accident, and in daylight, and from points of view chosen by the defendant. Having been taken under such widely varying conditions from those surrounding the deceased at the time of the accident, they fall far short of furnishing the clear and satisfactory evidence essential to establish the defense of contributory negligence. Courts have had frequent occasion to consider this character of evidence, and comment on its inconclusive and unsatisfactory character, in this class of cases. Miller v. Truesdale, 56 Minn. 274, 57 N. W. 661; Hutchinson v. St. Paul Ry. Co., 32 Minn. 401, 21 N. W. 212; Kellogg v. N. Y. C. & H. R. R. Co., 79 N. Y. 77; Massoth v. Delaware & Hudson Canal Co., 64 N. Y. 524.

The rules governing the rights and duties of travelers and railway trains at grade crossings are clearly defined by the Supreme Court of the United States in Continental Improvement Co. v. Stead, 95 U. S. 161, 24 L. Ed. 403, and Texas & Pacific Ry. Co. v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186, and by this court in St. Louis & S. F. Ry. Co. v. Barker, 23 C. C. A. 475, 77 Fed. 810. In the first of these cases the Supreme Court, speaking by Mr. Justice Bradley, says:

"The train has the preference and right of way. But it is bound to give due warning of its approach, so that the wagon may stop and allow it to pass, and to use every exertion to stop if the wagon is inevitably in the way. Such warning must be reasonable and timely. * * * On the other hand, those who are crossing a railroad track are bound to exercise ordinary care and diligence to ascertain whether a train is approaching. They have, indeed, the greatest incentives to caution, for their lives are in imminent danger if collision happen; and hence it will not be presumed, without evidence, that they do not exercise proper care in a particular case."

And it is further said in the same case:

"Conceding that the railway train has the right of precedence of crossing, the parties are still on equal terms as to the exercise of care and diligence in regard to their relative duties. The right of precedence referred to does not impose upon the wagon the whole duty of avoiding a collision. It is accompanied with and conditioned upon the duty of the train to give due and timely warning of approach. The duty of the wagon to yield precedence is based upon this condition."

And in Texas & Pacific Ry. Co. v. Gentry, supra, the court, speaking by Mr. Justice Harlan, says:

"Whether he [the deceased] did or did not stop and look and listen for approaching trains the jury could not tell from the evidence. The presumption is that he did; and, if the court had given the special instructions asked, it would have been necessary to accompany it with the statement that there was no evidence upon the point, and that the law presumed that the deceased did look and listen for coming trains before crossing the track."

No one was with the deceased or witnessed his movements, and the presumption prevails that he exercised ordinary care in approaching this crossing, and that he would not have been killed but for the culpable negligence of the defendant in neglecting to give the required timely warning of the train's approach. The conditions prevailing at this crossing at the time of the accident were such as to make it imperatively necessary for the safety of travelers for the railway train to give the statutory signals of its approach.

The rule is well settled that where the accident results in instant death, as it did in this case, "the law, out of regard to the instinct of self-preservation, presumes the deceased was at the time in the exercise of due care, and this presumption is not overthrown by the mere fact of injury. The burden rests upon the defendant to rebut this presumption." Flynn v. Railroad Co., 78 Mo. 195, 212, 47 Am. Rep. 99.

The presumption arising from this natural instinct of self-preservation stands in the place of positive evidence, and is sufficient to warrant a recovery, in the absence of countervailing testimony. Johnson v. Railroad Co., 20 N. Y. 65, 69, 75 Am. Dec. 375; Oldfield v. N. Y. & Harlem R. Co., 14 N. Y. 310; Adams v. Iron Cliffs Co. (Mich.) 44 N. W. 270, 18 Am. St. Rep. 441; Railway Co. v. State, 29 Md. 420, 438, 96 Am. Rep. 545; Railroad Co. v. Nowicki, 46 Ill. App. 566; The City of Naples, 32 U. S. App. 613, 16 C. C. A. 421, 69 Fed. 794; Allen v. Willard, 57 Pa. 374; Schum v. Railroad Co., 107 Pa. 8, 52 Am. Rep. 468; Cox v. R. Co. (N. C.) 31 S. E. 848; Cameron v. Railway Co. (N. D.) 77 N. W. 1016. Nor is this presumption applied only when no one witnesses the accident. It has its application in all cases, and may be strong enough to overcome the testimony of an eyewitness. In the case of McGhee v. Kennedy's Adm'r, 66 Fed. 502, 13 C. C. A. 608, 31 U. S. App. 366, a witness testified that the deceased saw the train, and attempted to get over before it, and whipped up his horses to do so. The Circuit Court of Appeals states that, "if that were true, it would have been the duty of the court below to charge the jury to return a verdict for the receivers." But the court said:

"It is very improbable that, if Kennedy had seen the train coming, he would have attempted to cross when so far from the track that he could not reach it with his wagon wheels before the coming of the train. The presumption of fact, and of law, too, would be against the existence of such wanton and reckless negligence, and the plaintiff was entitled to have the jury weigh the credibility of Miss Caldwell's evidence in the light of the circumstances."

This principle has been repeatedly affirmed and applied by the Supreme Court of the United States. Railroad Co. v. Gladmon, 15 Wall. 401, 21 L. Ed. 114; Railway Co. v. Griffith, 159 U. S. 603, 610,

16 Sup. Ct. 105, 40 L. Ed. 274; Texas & Pacific Ry. Co. v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186.

The court said to the jury:

"Mr. Spike had the highest motives to do just that—to look and to listen, to be on the alert and diligent to discover the presence of an approaching train, for his life depended upon that kind of caution; and you may take that fact into consideration in determining whether or not he did look and listen—the motive which he had to look and listen. That is one element that you may consider."

The defendant excepted to this part of the charge, and assigns the same for error; but, from the authorities already cited, it will be seen the charge of the court was not as strong in favor of the plaintiff in this regard as it might well have been.

The judgment of the Circuit Court is affirmed.