ANDREW CARLSON v. CHICAGO & NORTHWESTERN RAILWAY COMPANY.[1]

December 22, 1905.

Nos. 14,625—(130).

**Death at Railway Crossing.**

In an action to recover damages for the death of a person, caused by a collision with a train of defendant at the intersection of a street and the railroad track, where the uncontradicted evidence conclusively shows that when decedent was fifty feet distant from the railroad track a train could have been seen at a distance of twenty-five hundred feet from such crossing, and where the testimony shows that the deceased looked and listened for the train at that point, the law conclusively presumes either that he did not look and listen, or that if he did look and listen, or both, he afterwards heedlessly disregarded the knowledge thus obtained, and negligently went into an obvious danger.

[1] Reported in 105 N. W. 555.

**Use of Senses.**

Negligence of the defendant's employees in failing to whistle or ring a bell at a crossing is no excuse for negligence on the part of the person about to cross in failing to use his senses.

**Extra Train.**

That the train which collided was an extra did not relieve either party to the collision from the duty of the exercise of care.

**Presumption.**

The presumption that one who was killed while crossing a railway track looked and listened before attempting to cross it is destroyed where the plaintiff introduces direct and affirmative evidence as to exactly what occurred, and where it also appears from the undisputed evidence that if the deceased had looked and listened before going upon the crossing he must have seen and heard the train approaching.

Action in the district court for Nicollet county by plaintiff as administrator of the estate of Erick Pehrson, deceased, to recover $1,980 for the death of decedent. The case was tried before Webber, J., who directed a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Davis & Olsen* and *A. A. Stone,* for appellant.

*Brown, Abbott & Somsen,* for respondent.

JAGGARD, J.

This was an action brought to recover damages from the defendant for causing the death of Erick Pehrson by negligence.

According to the plaintiff the facts are as follows: On August 17, 1903, plaintiff's intestate was proceeding along a public street in the city of St. Peter, called Hartew street. He was driving in a jump-seat top buggy, hitched to a single horse. The horse was very gentle. The top on the buggy was up. The curtains of the top were down, but the one on the right-hand side, where deceased was sitting, was fastened only at the top. The front or jump-seat on the buggy was down, and the other seat in place over the same. He was accompanied by his daughter, thirteen years of age. On the right-hand side of the street was a cornfield, which obstructed entirely the view of the defendant's railroad track and right of way until the deceased arrived at a point fifty feet east of the center of the railroad track of the defendant. As the deceased approached the defendant's railroad track he was driving

very slowly, and when he reached a point at the corner of the right-of-way fence, fifty feet east of the center of defendant's railway track, he pulled up his horse and looked and listened for trains. In order to do so, the deceased had to stand up in the buggy and put his head outside of the buggy top. He then proceeded very slowly forward and onto the railway track of defendant, when he was struck by one of defendant's locomotives and a train of cars and instantly killed. The train was running very fast, more than fifty miles an hour, and in violation of an ordinance of said city, which ordinance is admitted to have been in force by the pleadings. The train which caused the death of plaintiff's intestate was an "extra," and arrived at the said crossing about thirty minutes after the regular passenger had gone down in the morning. There was no other regular train on this railroad, either way, for about three hours later than the time this "extra" arrived. There was a whistling post about thirteen hundred feet north of the Hartew street crossing, and near the city limits on the north. This "extra" train, which caused the death of plaintiff's intestate, approached this crossing, passing said whistling post, without giving any signals by bell or whistle. At any point between the center of the railroad track and the east line of the right of way, fifty feet east, a train could have been seen for a distance of twenty-five hundred feet to the north of said crossing, where a sharp curve prevented seeing it any further. The railroad track ran almost north and south at the place where it intersected Hartew street, which runs east and west. The day was still, clear, and warm.

The court granted the motion of the defendant to direct a verdict on the ground that the plaintiff's decedent was guilty of contributory negligence, and subsequently denied the plaintiff's motion for a new trial.

The essential question in this case concerns the contributory negligence of plaintiff's intestate. The defendant insists that it has demonstrated to a mathematical certainty that, if the deceased had been traveling at from a mile and a half to three miles per hour, and if the train had been going upwards of one hundred miles per hour, and a fortiori if the train had been going at less speed, the engine would necessarily have been in plain sight of the plaintiff's decedent, if he had looked at the point his daughter says he did look. The photographs taken and introduced in evidence tend to sustain this contention. Counsel for plaintiff presented no clear refutation of the correctness of this calculation.

Without, however, accepting it as unqualifiedly true, we are of the opinion that upon the record it conclusively appears that if the deceased had looked at this point he must have seen the moving train.

The principles of law applicable to this state of facts are definite and well settled. When the uncontradicted evidence conclusively shows that the colliding train must have been plainly visible from the point at which the testimony shows that the injured or killed person looked and listened for the train, the law conclusively presumes either that he did not look and listen, or that if he did look or listen, or both, he afterwards heedlessly disregarded the knowledge thus obtained and negligently went into an obvious danger. In neither view is the company operating the train responsible under ordinary circumstances for the damages consequent upon the collision, of which the person injured or killed was the proximate cause. Brown v. Milwaukee & St. P. Ry. Co., 22 Minn. 165, 167; Miller v. Truesdale, 56 Minn. 274, 57 N. W. 661; Weyl v. Chicago, M. & St. P. Ry. Co., 40 Minn. 350, 42 N. W. 24; Howe v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 62 Minn. 78, 64 N. W. 102; Nelson v. St. Paul & D. R. Co., 76 Minn. 189, 193, 78 N. W. 1041, 79 N. W. 530; Schmidt v. Great Northern Ry. Co., 83 Minn. 105, 85 N. W. 935; Kemp v. Northern Pac. Ry. Co., 89 Minn. 139, 142, 94 N. W. 439; Chicago & N. W. Ry. Co. v. Andrews, 130 Fed. 65, 64 C. C. A. 399; Northern Pac. R. Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763; Wardner v. Great Northern Ry. Co., supra, page 382.

If that point be so far distant from the track as to enable the person injured or killed to know of the approaching train in due season to avoid the collision with it, he is guilty of contributory negligence as a matter of law and there is nothing for a jury to pass upon. Blount v. Grand Trunk Ry. Co., 61 Fed. 375, 9 C. C. A. 526; Straugh v. Detroit, 65 Mich. 706, 36 N. W. 161; Huggart v. Missouri, 134 Mo. 673, 36 S. W. 220; Stopp v. Fitchburg, 80 Hun, 178, 29 N. Y. Supp. 1008; Morris v. Lake Shore, 148 N. Y. 182, 42 N. E. 579; Marland v. Pittsburg, 123 Pa. St. 487, 16 Atl. 623; Butler v. Gettysburg, 126 Pa. St. 160, 19 Atl. 37.

The present case is obviously distinguishable from Hendrickson v. Great Northern Ry. Co. The environment and the cause of the accident in that case were essentially different. When Hendrickson emerged from a ravine at a point fifty feet from the railroad, the engine came in

view in a cut about one hundred fifty feet away and at once gave short and shrill danger whistles, whereby the horses became frightened and unmanageable, reared, and plunged forward toward the rails, notwithstanding the driver's efforts to control them, whereby the collision occurred. Collins, J., in Hendrickson v. Great Northern Ry. Co., 49 Minn. 251, 51 N. W. 1044; Id. 52 Minn. 340, 54 N. W. 189.

Another principle is well established: That a person crossing as deceased was could not rely upon the signals to remind him of danger. "He is bound to be awake and alive for his own protection." Lewis, J., in Sandberg v. St. Paul & D. R. Co., 80 Minn. 442, 83 N. W. 411. Accordingly, the failure of plaintiff's intestate to look and listen would be negligence or not according to the circumstances, but without being controlled by the defendant's failure to do its duty. Beach, Cont. Neg. § 185; Schneider v. Northern Pac. Ry. Co., 81 Minn. 383, 84 N. W. 124. Negligence of the defendant's employees in failing to whistle or ring a bell at a crossing is no excuse for negligence on the part of the person about to cross in failing to use the senses to discover danger. Railroad Co. v. Houston, 95 U. S. 697, 702; Northern Pac. R. Co. v. Freeman, supra. And see cases collected in Judson v. Great Northern R. Co., 63 Minn. 248, 254, 65 N. W. 447.

The duty of exercising caution in attempting to cross a railway track, a place of known danger, is not relaxed by the opportunity or occasion for theorizing or difference of opinion as to whether a train is or is not likely to pass. Observation, not logic, is the proper precaution. Dodge, J., in Guhl v. Whitcomb, 109 Wis. 69, 85 N. W. 142. That the train which did the damage in this case was an "extra" did not relieve either party from the respective duty of the exercise of care. Swiftly moving and irregular trains are to be expected, and it is the duty of persons about to go upon crossings to look and listen for such trains, as well as those on time or which run slowly. Collins, J., in Judson v. Great Northern R. Co., supra. It is true that, in the absence of evidence to the contrary, there is sometimes a presumption that one who was killed while crossing a railroad track stopped, looked, and listened before attempting to cross the track. Texas & Pac. Ry. Co. v. Gentry, 163 U. S. 353, 366, 16 Sup Ct. 1104; Baltimore & P. R. Co. v. Landrigan, 191 U. S. 461, 474, 24 Sup. Ct. 137. But in this case the plaintiff introduced evidence of the daughter of deceased, who was driving with him, as

to what happened. Moreover, when it appears from the undisputed evidence that, if deceased had looked and listened before driving upon the crossing, he must have seen and heard the train approaching, as was the case here, the presumption is destroyed. Rollins v. Chicago, M. & St. P. Ry. Co. (C. C. A.) 139 Fed 639.

Accordingly, upon plaintiff's own view of the facts in this case, that deceased looked up the track at a point fifty feet from it, it is not necessary to determine how far there is to be applied to it the ordinary rule that one who attempts to cross a railroad is bound to use his senses continually while approaching and while crossing the place of known danger (Rogstad v. St. Paul, M. & M. Ry. Co., 31 Minn. 208, 17 N. W. 287; Sandberg v. St. Paul & D. R. Co., 80 Minn. 442, 83 N. W. 411; Cf. Wright v. Cincinnati, 94 Ky. 114, 21 S. W. 581; Renwick v. New York, 36 N. Y. 132; Whitman v. Pennsylvania, 156 Pa. St. 175, 27 Atl. 290; Thompson v. New York, 110 N. Y. 636, 17 N. E. 690; Moore v. Chicago, 102 Iowa, 595, 71 N. W. 569), in view of the fact that he was riding in a covered carriage, making it inconvenient for him to look up and down the road. See Stakus v. New York, 79 N. Y. 464; Hicks v. New York, 164 Mass. 424, 41 N. E. 721.

The conclusion thus reached renders it unnecessary to consider the other questions raised; for example, with respect to defendant's negligence in running faster than the ordinance permitted and to the reasonableness of that ordinance.

Order affirmed.