## ANNIE M. LEWIS v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY and Another.[1]

July 22, 1910.

Nos. 16,636—(186).

Contributory negligence a question of fact.

  Evidence considered in this a personal injury case, and *held,* that it was a question of fact whether the plaintiff's intestate was guilty of negligence contributing to his death.

[1] Reported in 127 N. W. 180.

Action by the administratrix of the estate of William H. Lewis, deceased, to recover $5,000 for the death of her intestate caused by defendants' alleged negligence while in its employ. The complaint alleged that "upon said morning of April 28, 1907, while said decedent in the discharge of his duties * * * was necessarily and carefully proceeding along and in the vicinity of said tracks for the purpose of finding and reaching said locomotive to operate the same, as said defendant then and there well knew, said defendant carelessly and negligently caused one of its locomotives operated by and in charge of said defendant Timothy R. Cavanaugh to be carelessly and negligently propelled * * * upon and against said decedent inflicting upon him injuries from which he died almost immediately; that said decedent had no knowledge or notice of the approach of said locomotive or opportunity to escape therefrom." The case was tried before Kelly, J., who directed a verdict in favor of defendant. From an order denying plaintiff's motion for a new trial, she appealed. Reversed and new trial granted.

*J. H. Mulally* and *John D. O'Brien,* for appellant.
*James B. Sheean,* for respondent.

START, C. J.

The plaintiff's intestate, William H. Lewis, had been for many years in the employ of the defendant as a locomotive engineer, when on April 28, 1907, at 6:10 A. M., while he was in the line of his duty in the defendant railway company's yards in East St. Paul, he was struck by an engine and killed. He left him surviving a widow and four children, for whose benefit this action was brought in the district court of the county of Ramsey, to recover damages by reason of his death, on the ground that it was caused by the alleged negligence of the defendant railway company in driving an engine upon him without warning of any kind. The answer of the defendant denied any negligence on its part, and alleged that the death of Mr. Lewis was caused by his own negligence. Upon the trial, and at the close of all of the evidence, the trial judge directed a verdict for the defendant, upon the ground that the deceased was guilty of contribu-

tory negligence as a matter of law. The plaintiff appealed from an order denying her motion for a new trial.

The evidence was amply sufficient to justify a finding by the jury that the defendant was negligent as alleged. The only question, then, for our decision, is whether the evidence conclusively established the contributory negligence of the deceased as a matter of law. The test by which the question must be solved is whether honest and fair-minded men might reasonably draw different conclusions from the undisputed evidence or admitted facts of the case. If there be a fair doubt as to the inferences to be drawn therefrom, the question must be submitted to the jury. The test in practice must be applied with caution, lest courts usurp the functions of the jury and unwittingly deprive parties of their constitutional right to a trial by jury. In the absence of such fair doubt, it is the duty of the court to decide the question as one of law and instruct the jury accordingly. Abbett v. Chicago, M. & St. P. Ry. Co., 30 Minn. 482, 16 N. W. 266; Scheiber v. Chicago, St. P., M. & O. Ry. Co., 61 Minn. 499, 500, 63 N. W. 1034; McDermott v. Severe, 202 U. S. 600, 26 Sup. Ct. 709, 50 L. Ed. 1162.

Again, where a man is killed by the negligence of another, and it is sought to take a case for the recovery of damages for his death from the jury by a finding of the trial judge that the dead man was guilty as a matter of law of negligence contributing to his death, the undisputed evidence must clearly and fully rebut every reasonable presumption that he was in the exercise of due care. This rule, obviously, is based upon the plainest principles of human justice. In such cases there is a strong presumption that the deceased exercised due care to save himself from injury or death. The presumption is founded on a law of nature, the universal and insistent instinct of self-preservation. Nevertheless careful men are sometimes careless, and the presumption must yield to clear proof of negligence. Hendrickson v. Great Northern Ry. Co., 49 Minn. 245, 51 N. W. 1044, 16 L. R. A. 261, 32 Am. St. 581; Baltimore & Potomac R. Co., v. Landrigan, 191 U. S. 461, 24 Sup. Ct. 137, 48 L. Ed. 262. In considering the evidence in this case, to ascertain whether it conclusively rebuts all reasonable presumptions of due care on the part of

the deceased, and establishes his contributory negligence as a matter of law, we must take into consideration the relation of the deceased to the defendant, and that he was at the time of his death in the line of his duty. The rule as to looking and listening by persons about to cross a railway track does not apply to its fullest extent to such cases. Raiolo v. Northern Pacific Ry. Co., 108 Minn. 433, 122 N. W. 489.

None of the cases cited by the respondent in support of the directed verdict is one in which the party injured or killed was an employee of the defendant charged with duties in its railway yards or upon its tracks. The undisputed evidence tended to show that the deceased was fifty-nine years old at the time of his death; that he had been in the employ of the defendant for more than thirty years as a locomotive engineer, and for ten years next before his death he was running as an engineer in and out of the defendant's yards at East St. Paul, and was entirely familiar with the yards and tracks and the manner of operating them; that on the morning of his death he went to the roundhouse in the yards to get any instructions that might be there bulletined for him, as was his custom and duty; that he then went through the yards in search of his engine, which was in fact then standing on what was called the "roundhouse track," under a bridge crossing the yards; that as he was proceeding toward his engine, along a path used by employees of the defendant, between the rails, an engine came up behind him, without ringing the bell or giving warning of any kind, and struck and killed him; that neither engineer nor fireman on the engine knew of the accident until after it happened, nor does it appear from the evidence what the deceased was doing at the precise time he was struck by the engine; that it was broad daylight, and that snow had fallen the night before, which had a tendency to deaden the noise made by the approaching engine; and, further, that it was the custom in the yard, personally known to the deceased, to ring the bells on moving engines to warn persons on or near the tracks of their approach. There was other evidence giving in detail the construction and operation of the yards and the movements of the deceased on the morning of the accident, all of which has received our careful consideration. We are of the opinion, based

upon an examination of the whole evidence, that it was a question of fact whether the evidence completely and fully rebutted the presumption that the deceased was exercising due care under all the circumstances when he was struck by the engine. Therefore the question should have been submitted to the jury, with proper instructions.

As there must be a new trial, we refrain, for obvious reasons, from discussing the evidence.

Order reversed, and a new trial granted.

O'BRIEN, J., took no part.