## JOHN RICHTER v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.[1]

July 24, 1925.

No. 24,682.

**Plaintiff guilty of contributory negligence.**

 Action for damages arising out of a collision between a passenger train and an automobile at a street crossing. The evidence shows that plaintiff was guilty of contributory negligence as a matter of law.

See Railroads, 33 Cyc. pp. 1019, 1096.

---

See notes in 21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924; 46 L. R. A. (N. S.) 702; 2 R. C. L. p. 1205; 1 R. C. L. Supp. pp. 741, 742; 4 R. C. L. Supp. pp. 157, 158; 5 R. C. L. Supp. p. 143.

Action in the district court for Dakota county. The case was tried before Converse, J., and a jury which returned a verdict in favor of plaintiff. Defendant appealed from an order, Schultz, J., denying its motion for judgment notwithstanding the verdict or for a new trial. Reversed.

*O'Brien, Horn & Stringer*, for appellant.

*Albert Schaller, C. F. Ingalls* and *Hallam, Todd, Fosnes & Sterling*, for respondent.

TAYLOR, C.

On May 31, 1923, defendant's eastbound passenger train coming from the city of Minneapolis collided with plaintiff's automobile when crossing Oneida street in the city of St. Paul. Plaintiff recovered a verdict of $1,000 for the injuries to his person and the damages to his automobile. Defendant appeals from an order denying its alternative motion for judgment non obstante or for a new trial.

[1]Reported in 204 N. W. 881.

Defendant contends that the evidence does not justify a finding of negligence on·its part, and that plaintiff was guilty of ·contributory negligence as a matter of law.

Defendant runs its trains between the two cities over a double track railroad—eastbound trains over the south track, westbound over the north track. Oneida street extends north and south, and crosses these tracks at a right angle or nearly so. The tracks are on an embankment one or two feet high at Oneida street and 11 feet high three blocks west of that street. There were no buildings on the north side of the tracks for a distance of four blocks west of Oneida street, but the ground was covered with a growth of weeds and bushes, some of which were 5 feet in height according to plaintiff's testimony. There were also some small trees ranging in height from 8 to 15 feet according to his testimony. The photograph in evidence, taken 6 weeks after the accident, fails to show these trees, but there was testimony that some of them had been cut down by schoolboys playing "Indian" before the picture was taken. Plaintiff also claims that there was something in the nature of steam, smoke or mist, which interfered with his view to the west. None of the other witnesses mention anything of that sort.

Plaintiff was driving south on Oneida street. He states that when within 15 or 20 feet of the tracks he stopped and looked both ways; that he saw a train some distance away coming from the east on the north track; that, concluding he had ample time to cross ahead of it and seeing no train coming from the west on the other track, he started slowly forward; that when his rear wheels were on the north track he saw a black shadow and discovered that a train coming from the west on the south track, which he had not previously seen, was within 100 feet and perhaps within 50 feet of him; and that he stopped within two feet and attempted to reverse, but before he could do so, the locomotive struck his automobile, evidently near the front, and overturned it, throwing him out upon the roadway. The engineer of the westbound train saw both plaintiff and the other train. He states that plaintiff slowed down, but did not stop when approaching the tracks, and that he feared that

plaintiff might stop on the. north track to avoid the train on the south track and for that reason brought his train to a stop before reaching the crossing. The eastbound train being on a down-grade was coasting with steam shut off at a speed variously estimated at 7 to 12 miles per hour. The engineer of this train was on the opposite side of the locomotive from plaintiff and did not see him or know that he was at the crossing until after the collision.

Taking plaintiff's version of the occurrence as correct, as we must on this appeal, it is doubtful whether any negligence was shown on the part of defendant; but, assuming that the evidence was sufficient to make that issue a question for the jury, we cannot escape the conclusion that, if plaintiff had looked toward the west with the degree of care and alertness required when about to cross a railroad at grade, he must have seen the train which was approaching on the south track. The rules governing such cases have been stated so frequently and so recently that it is not necessary to repeat them here. See Carlson v. C. & N. W. Ry. Co. 96 Minn. 504, 105 N. W. 555, 4 L. R. A. (N. S.) 349, 113 Am. St. 655; Knapp v. N. P. Ry. Co. 139 Minn. 338, 166 N. W. 409; Anderson v. G. N. Ry. Co. 147 Minn. 118, 179 N. W. 687; Jensen v. M. St. P. & S. S. M. Ry. Co. 154 Minn. 414, 191 N. W. 908; Rintala v. D. W. & P. Ry. Co. 159 Minn. 499, 199 N. W. 562.

Plaintiff was familiar with the situation and knew that trains passed over these tracks between the two cities at frequent intervals. The train was on an embankment and could easily have been seen at any time after plaintiff was within 100 feet of the track. He does not claim to have looked until within 15 or 20 feet of the track. If foliage or smoke made the view to the west indistinct as he claims, this did not relieve him from the duty to exercise due care for his own safety, but, as said in the cases cited, required him to exercise a commensurate amount of caution and alertness to avoid danger. The order appealed from is reversed and judgment will be entered for defendant.

STONE, J., took no part.