## ARTHUR HANSON v. DULUTH, MISSABE AND IRON RANGE RAILWAY COMPANY.

124 N. W. (2d) 486.

November 8, 1963—No. 38,923.

*Davis & Lush* and *Paul F. Clements,* for appellant.

*Franklin B. Stevens, John F. McGrath,* and *William J. Berquist,* for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment granted in favor of the defendant railway company notwithstanding a verdict for the plaintiff. The action arises out of a collision between a Budd car operated by the defendant company and an automobile driven by the plaintiff. The trial court determined that the plaintiff was contributorily negligent as a matter of law. It is on this issue that the case is brought before us.

Our review of the record must be guided by the well-established principle that a motion for judgment notwithstanding the verdict accepts the view of the evidence most favorable to the verdict, and ad-

mits every reasonable inference therefrom, as well as the credibility of the testimony for the adverse party. Bigo v. Duluth, M. & I. R. Ry. Co. 262 Minn. 471, 115 N. W. (2d) 230.

From the record it appears that the accident occurred at a railroad crossing on September 2, 1959, at about 5 p. m., daylight savings time. The railroad right-of-way runs generally north and south parallel with the north shore of Lake Superior. The plaintiff has resided all his life in a small community east of the railroad right-of-way along the shore of Lake Superior, in which there are four homes occupied by the plaintiff and his relatives. The right-of-way fence separates the railroad property from the adjacent land owned by members of the plaintiff's family. West of the railroad right-of-way and running generally parallel to it is State Highway No. 61, which is the public thoroughfare used by the plaintiff and members of his family. Highway No. 61 is reached by a small gravel road from the plaintiff's home. The roadway runs east and west and crosses the railroad right-of-way at right angles. The road goes up a considerable grade as it reaches the crossing. At a point 44 feet east of the crossing the road is 4.8 feet below the track, and it is 5.7 feet below the track at a distance of 60 feet. The railroad right-of-way at the place where the accident occurred is 100 feet wide. At the time of the accident the plaintiff was 59 years of age and had used this crossing daily for all or most of his adult life.

On the day of the collision the plaintiff was operating his automobile on a family errand and was proceeding from his home towards Highway No. 61. As he crossed the railroad tracks his car was struck by a Budd car which is a diesel-powered, passenger car operated by the defendant company. This car was on time and operated on a scheduled run. The plaintiff was familiar with the regular runs of the Budd car, which usually ran on time. The record indicates that out of 245 trips in a southerly direction it was late only 19 times. At the time of the collision the Budd car was proceeding at 38 miles per hour. As the plaintiff approached the crossing he was driving his automobile at 10 to 15 miles per hour. He testified that at a point just outside the right-of-way he slowed down and then accelerated up the grade starting from the right-of-way fence, the point where he could

first get a clear view. It is clear from the record that if the plaintiff had looked to the north as he entered the right-of-way, 50 feet from the center of the track, he could have seen the approaching Budd car. Although plaintiff could perhaps have seen the Budd car for some distance before he reached the right-of-way fence, it may be assumed here that he would not have had a clear view of the train before he reached that point. The photographs would indicate that before that point the view was largely obscured by brush and trees east of the right-of-way.

The plaintiff urges that because of certain circumstances existing at the place of the accident he cannot be held guilty of contributory negligence as a matter of law. He points to the elevation of the track above the road as it approaches the crossing; the existence of a "cut" in the right-of-way north of the crossing; and the presence of high grass which interfered with the view of one approaching the crossing from the east. These contentions must be viewed against the actual physical facts as they existed at the time and place of the accident. In the first place we are not concerned here with a blind railroad crossing over a highway generally used by the public. The assertion that the track came through a "cut" north of the crossing is predicated upon testimony of two of plaintiff's witnesses that this depression was from 2 to 5 feet deep. There is a ditch alongside the track which might give the impression that it comes through a cut. Engineering measurements by the defendant, however, show that north of the crossing the land between the track and the east right-of-way fence is generally level with the track so that at no point within 500 feet of the crossing is it more than 1.7 feet above the track. There was evidence that the height of the grass along the right-of-way was about 3 feet. The plaintiff testified that he could see an approaching train from the line of the right-of-way fence which he estimated as being 20 or 30 feet from the crossing. The actual measurements, however, establish that the fence was 50 feet from the center of the crossing. The claim that the "cut" or high grass interfered with the view of the approaching train loses its force when it is considered that the height of the Budd car was actually 13 feet 7 inches above the tracks. The record fairly establishes that at a point

50 feet east of the center of the crossing a train coming from the north would be in plain sight for a distance of 520 feet.

It may be further observed that there was conflicting testimony on whether a signal was given as the train approached the crossing. Aside from the plaintiff himself, all of his witnesses were inside various houses in the area at the time they made their observations, while several disinterested passengers had heard either a whistle or a bell, or both, and both were being used according to the testimony of the two engineers.

In granting judgment notwithstanding the verdict, the trial court had in mind the correct principle of law applicable to the facts in this case. That rule was announced in Dahlquist v. Minneapolis & St. L. Ry. Co. 230 Minn. 203, 205, 41 N. W. (2d) 587, 588, where it was said:

"* * * If the driver of the automobile involved in a collision with a train at a railroad crossing has an adequate opportunity under the surrounding circumstances to know of and see the approaching train in time to avoid the collision, he is guilty of contributory negligence as a matter of law."

The foregoing rule was applied in the recent case of Nelson v. Minneapolis, St. P. & S. S. M. R. Co. 260 Minn. 61, 65, 108 N. W. (2d) 720, 722, where we observed that while the view of the approaching train was somewhat obstructed by a cut, through which the train approached the crossing, it was nevertheless apparent that if the plaintiff there had looked—

"* * * he would have seen the train in spite of this obstruction of his view at a distance from the track where, according to his own testimony, he could easily have avoided the collision. Under these circumstances, plaintiff is guilty of contributory negligence as a matter of law, * * *."

The rule stated in the Dahlquist case has been adhered to in numerous decisions of this court. Anderson v. G. N. Ry. Co. 147 Minn. 118, 179 N. W. 687; Carlson v. Chicago & N. W. Ry. Co. 96 Minn. 504, 105 N. W. 555; Bigo v. Duluth, M. & I. R. Ry. Co. *supra*; Olson v. Du-

luth, M. & I. R. Ry. Co. 213 Minn. 106, 5 N. W. (2d) 492; Hicks v. N. P. Ry. Co. 239 Minn. 373, 58 N. W. (2d) 750; Rogge v. G. N. Ry. Co. 233 Minn. 255, 47 N. W. (2d) 475; Richter v. Chicago, R. I. & P. Ry. Co. 164 Minn. 284, 204 N. W. 881; and Rintala v. Duluth, W. & P. Ry. Co. 159 Minn. 499, 199 N. W. 562.

If we apply these authorities to the fact situation presented by the record, we must conclude that the trial court was correct in determining that the plaintiff was guilty of negligence as a matter of law in failing to see the approaching train or, seeing it, failing to stop. If the elevation of the track above the road interfered with his view to the right, the plaintiff was under an obligation to exercise extra caution. Anderson v. G. N. Ry. Co. *supra*. While a driver is not generally required to get out of his car to look, it would seem from our authorities that, where the driver is familiar with the possible hazards, he must proceed as slowly as necessary or even stop to get a clear view rather than accelerating his vehicle to get across the tracks. Rintala v. Duluth, W. & P. Ry. Co. *supra*.

We think the trial court correctly appraised the merits of the case in his memorandum where he pointed out that—

"* * * the crossing here in issue could not be considered to be an extra-hazardous crossing even though it [was located] in a small rural community. The road which crossed the track at this point was little more than a private drive serving as it did a very small number of private residences and carrying no through traffic whatever. * * * having in mind the height from the ground of the eyes of a driver approaching the track, the fact that the track was elevated and that the diesel unit stood some 14 feet above the top of the rail, any grass shown in the pictures taken the following day could not well have obstructed the view of a driver approaching the crossing. * * * the evidence presented here together with the physical facts * * * require a finding that plaintiff was negligent as a matter of law. [The plaintiff] was thoroughly familiar with the crossing in question, knew that trains were being operated on it, and on the admitted testimony as to his speed and the grade of the highway as it approached and crossed the track, he was under a duty to discover the approach of the train

and certainly could have stopped his vehicle in time to avoid a collision had he used the care which was required of him by the law under the circumstances then existing."

It is unnecessary for us to discuss any issue bearing on the negligence of defendant. The failure of the railroad to signal its approach would not excuse plaintiff's failure to look before crossing the tracks.

Affirmed.