McGRATH, Appellant, vs. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Respondent.

*November 8, 1927—February 7, 1928.*

*Railroads: Accidents at grade crossings: Direction of flagman to proceed: Contributory negligence: Question for jury.*

1. In an action for injury to plaintiff's automobile, resulting from a collision with defendant's train at a grade crossing, the burden of proving contributory negligence of plaintiff's wife, who was driving the automobile, was on defendant; and the question as to such negligence, unless established by evidence so clear and convincing as not to reasonably admit of any opposing inference, should have been submitted to the jury. p. 14.

2. Evidence that the driver of the automobile was directed to cross the tracks by defendant's flagman and that she discovered the train coming twenty feet away when the front wheels of the automobile were nearly on the tracks, and accelerated her speed but failed to clear the tracks before being struck, did not show contributory negligence as a matter of law, but made a case for the jury. p. 15.

3. In such circumstances the driver was not bound as a matter of law to keep her eyes in both directions to discover an approaching engine, in driving the one and one-third seconds immediately following the flagman's direction to proceed. p. 15.

APPEAL from a judgment of the circuit court for Winnebago county: FRED BEGLINGER, Circuit Judge. *Reversed.*

This is an appeal from a judgment dismissing plaintiff's

complaint with costs against the plaintiff. The case involves damages for injury to plaintiff's automobile resulting from a crossing accident in the city of Neenah.

The case was tried before a jury, and at the conclusion of the testimony a verdict was directed in favor of the defendant on the ground that plaintiff's wife, who was driving the car, was guilty of contributory negligence.

For the appellant there was a brief by *Martin, Martin, Clifford & McHale* of Green Bay, and oral argument by *G. F. Clifford.*

For the respondent there was a brief by *Hayes, Darnieder & Hayes,* attorneys, and *W. A. Hayes,* of counsel, all of Milwaukee, and oral argument by *W. A. Hayes.*

The following opinion was filed December 6, 1927:

CROWNHART, J. Plaintiff's wife was driving the plaintiff's car, a Cadillac sedan, westerly on Main street in the city of Neenah. It was a bright, clear day, about 2:30 or 3 p. m. on June 9, 1925. While thus driving she came to the place where defendant's railroad crossed Main street, and it was at this point that the accident occurred. The railroad crossing consisted of four tracks which, for the purposes of the case, are numbered from east to west, one, two, three, and four, coming from the south nearly parallel and as they approached the street spreading out fan-wise, two tracks to the northwest and two to the northeast. Main street was paved with concrete, was about sixty feet wide, and a street-car track ran through the center of the street. Plaintiff's wife was going west, on the north side of the street-car track, about midway between the track and the curb. As she approached the railroad track she slowed down, looked both ways, and proceeded across the first two tracks. As she was crossing these tracks a flagman came out from his shanty and flagged her to stop. The flagman's shanty was about eight feet by eight feet square, and was about five or six feet north of the Main-street curb and

about fifteen feet from track three on its west. The flagman stood directly in front of his shanty and midway between the curb and the street-car track, and held up with his right hand a "Stop" sign. The plaintiff's wife testified that she stopped her car when she was flagged, about five feet from the flagman. An engine was coming from the south, going north, on track three. Immediately as it passed over the highway the flagman lowered his sign, and with it in his hand beckoned plaintiff's wife to proceed. She at once put the car into low and then into second, and moved forward. She was on track three, with the front wheels of the car on, or nearly on, track four, when she discovered an engine going south on track four, about twenty feet north of her. She thought the only thing she could do was to go fast and get over the track to avoid an accident. She thought she could not stop her car before crossing track four in order to avoid an accident. She thereupon turned her car slightly to the south and accelerated the speed. The car nearly crossed the track before being struck by the engine. The engine hit the car at the right hind wheel.

Another engine had gone north on track three, just preceding the engine which caused the car to stop. It appears that while the car was stopped by the flagman, the flagman's shanty interfered with the view to the northwest, and also the engines passing north on track three interfered with the view to the northwest. The driver of the car testified that she had gone over this crossing many times before, and that at such times the flagman was always present to give warning at the crossing, and that she had come to rely upon the flagman to safeguard her passage; that she relied on the flagman on the day in question, and as soon as he beckoned her to go forward, just as the engine had crossed the highway, she immediately started her car; that she looked at that time to the north and to the south, saw no engine coming, heard no bell, and did not discover her danger until it was too late.

Up to this point the testimony of plaintiff's wife is substantially without dispute. It is corroborated largely by the testimony of the engineer and the conductor, who were in the cab of the engine. Their testimony is more or less confused, but on the whole it is about as favorable to the plaintiff as the testimony of the plaintiff's wife. Her testimony is also corroborated by the testimony of her mother, who sat in the front seat with her, holding on her lap the three-year-old child of the plaintiff.

The witness further testified that the conductor immediately got down from the engine and came to the car and helped her out. She was excited and the conductor said to her, "Don't worry, the flagman was to blame,—I saw it all." Mrs. Coon, the witness's mother, testified to the same effect. This statement, however, is denied by the conductor.

The court directed a verdict for the defendant on the ground of the contributory negligence of plaintiff's wife. The burden of proof of contributory negligence rested with the defendant. Unless contributory negligence was established by evidence so clear and convincing as not to reasonably admit of any opposing inference, the question should have been submitted to the jury. The plaintiff's wife was an experienced driver and familiar with the crossing. Without question she used due care until she was stopped by the flagman. At that time her car was about forty-five feet from track four. As she was directed to proceed, she immediately put her car into low and then into second, and had attained a speed of about ten miles an hour when she discovered the engine bearing down upon her. At this point it would seem that the witness was bound to exercise quick judgment, and that she could not be held to any strict degree of accuracy in her estimation of what was the safest thing to do to escape danger. But it is contended by the defendant that up to this point she had traveled some thirty feet or more and that,

in the exercise of ordinary care, she should have discovered the engine coming down on track four sooner than she did. The trial court estimated that she had traveled a distance of nineteen feet in which she had an unobstructed view of the engine to the north. Assuming that to be true, a distance of nineteen feet, traveling at the rate of ten miles an hour, would be covered in 1.296 seconds. It cannot be held as a matter of law that a person crossing railroad tracks under the direction of a flagman, and relying upon his signal to cross, is bound to keep his eyes in both directions to discover an approaching engine, in driving the one and one-third seconds immediately following the flagman's directions to proceed. The flagman had created a trap by his conduct, into which she was led, relying upon his signal of safety. *Gundlach v. C. & N. W. R. Co.* 172 Wis. 438, 179 N. W. 577, 985, and cases there cited. The court was in error in taking the case from the jury.

*By the Court.*—The judgment of the circuit court is reversed and a new trial ordered.

A motion for a rehearing was denied, with $25 costs, on February 7, 1928.