NELS FARDEN v. GREAT NORTHERN RAILWAY COMPANY.[1]

April 28, 1933.

No. 29,154.

*Henry Nycklemoe* and *Roger L. Dell,* for appellant.
*A. L. Janes* and *J. H. Mulally,* for respondent.

*WILSON, Chief Justice.*

Plaintiff appealed from an order denying his motion for a new trial after a verdict had been directed for defendant.

On October 19, 1931, at about two p. m. on a clear, quiet, dry day, plaintiff's decedent, while driving his automobile, was struck by one of defendant's gas trains, resulting in his instant death. The accident happened on a Gran street grade crossing within the limits of the village of Evansville, in Douglas county.

Defendant's tracks run east and west, and Gran street north and south. Decedent was familiar with the crossing and had traveled over it frequently for several years, he living on a farm about two and one-half miles northeast of the village.

Decedent approached the crossing from the north, and the train came from the east. North of the tracks there are no houses on

[1]Reported in 248 N. W. 284.

Gran street nearer than 75 feet, but one is located on the easterly side of the street that distance north of the crossing. There was no opportunity for decedent to see a train coming from the east until after he passed this particular house. Immediately after passing it and at a point in Gran street 75 feet from the main line track he had a long-distance view partially obstructed by two tool houses and a section house. The nearest tool house is 8 feet east and west by 12 feet north and south and about $9\frac{1}{2}$ feet high. It is about 15 feet from the main line track and 85 to 90 feet from the center of Gran street. The second tool house is 10 feet north and south by 40 feet east and west and $11\frac{1}{2}$ feet high. It is 15 feet from the main line track and is 130 to 140 feet from the center of Gran street. The first tool house is $9\frac{1}{2}$ feet above the rail, and the second 11 feet above the rail. The top of the body of the gas car was 13 feet $1\frac{1}{4}$ inches above the top of the rail and the top of the radiator, and the front of the gas motor was 14 feet $1\frac{1}{4}$ inches above the top of the rail. The section house is a two-story building 20 by 26 feet, situated about 32 feet from the main track, and is 288 feet from the center of Gran street. On the south side of the track, coming from the east, there are no obstructions of any kind along the track east of Gran street.

There are pictures in evidence showing the view to the east taken from points in Gran street 75 feet, 50 feet, 35 feet, 25 feet, and 15 feet from the center of the main track on the crossing. The picture taken at 75 feet to the north shows a panoramic view, obstructed only by the three buildings. At a point about 40 feet to 45 feet from the crossing these buildings apparently make their greatest obstruction. From the point 25 feet north from the center of the main track there is an unobstructed view of the track to the east of over 230 feet, and from the point 15 feet to the north there is an unobstructed view for approximately one mile to the east. The pictures showing these last two views are of great importance.

This crossing carried no unusual danger. Some cars may have been standing on a sidetrack north of the main line and west of Gran street. It is said that decedent may have been watching for

a train from the west coming from behind such standing cars; there is no evidence as to the number of any such cars, but his view to the east was open. He should have had no difficulty in crossing the track. Due care should have avoided the collision. Had he looked he necessarily would have seen the oncoming train. The pictures and maps with all the evidence in the record show that decedent could not have used due care on his part or he would have seen the train in time to avoid the accident.

As was said in Anderson v. G. N. Ry. Co. 147 Minn. 118, 120, 179 N. W. 687, 688:

"When the evidence conclusively shows that a colliding train must have been visible from the point where the traveler should have looked and listened, a conclusive presumption arises, either that he failed to look and listen, or else heedlessly disregarded the knowledge thus obtained and negligently encountered obvious danger."

The presumption that decedent exercised due care is destroyed by the evidence in the case. When the uncontradicted evidence shows that decedent must have seen the train if he had looked, the conclusion that he exercised due care is conclusively refuted. Olin v. Minnesota Tr. Ry. Co. 164 Minn. 512, 205 N. W. 440.

Upon authority of Jones v. G. N. Ry. Co. 178 Minn. 322, 227 N. W. 45, 47, and the cases therein cited, we hold that decedent was guilty of contributory negligence as a matter of law. See also Carlson v. Duluth St. Ry. Co. 180 Minn. 505, 231 N. W. 246; Wieden v. M. St. P. & S. S. M. Ry. Co. 181 Minn. 235, 232 N. W. 109.

Affirmed.